# No. 06-41128

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

―――――――――――――

UNITED STATES OF AMERICA,

Plaintiff-Appellee

-vs-

MICHAEL RAY HARRISON

Defendant-Appellant

―――――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

―――――――――――――

BRIEF OF THE UNITED STATES OF AMERICA

―――――――――――――

MATTHEW D. ORWIG
United States Attorney
Eastern District of Texas

ROBERT L. RAWLS
Assistant United States Attorney
Eastern District of Texas
350 Magnolia, Suite 150
Beaumont, Texas  77701
(409) 839-2538
Louisiana Bar No. 17235

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Because Appellee is the government, a certificate of interested persons is not required.  5th Cir. R. 28.2.1.

# <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Rule 34 of the Federal Rules of Appellate Procedure, the United States of America submits that oral argument is not necessary in this case as the issue presented for review may be decided after review of established case law and the briefs submitted.  The Appellant has not requested oral argument.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, vi, vii

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

CASES: _____ Page

Maine v. Taylor,
 477 U.S. 131 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29

United States v. Alonzo,
 435 F.3d 551 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Alvarez,
 6 F.3d 287, 289 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Angeles-Mendoza,
 407 F.3d 742 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29, 30

United States v. Booker,
 543 U. S. 220 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 29, 30

United States v. Brown,
 54 F.3d 234 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v. Cardeneas,
 9 F.3d 1139 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Cathey,
 259 F.3d 365 (5th Cir.2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Condren,
 18 F.3d 1190 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-29

United States v. Fields,
 72 F.3d 1200 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Garcia Abrego,
 141 F.3d 142 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Gary,
        74 F.3d 304 (1st Cir.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

United States v. Jones,
        133 F.3d 358 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

United States v. Loney,
        219 F.3d 2871 (3rd Cir.2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

United States v. Mares,
        402 F.3d 511 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27, 29

United States v. Mitchell,
        166 F.3d 748 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v. Munoz,
        150 F.3d 401 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Restrepo,
        994 F.2d 173 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Reynolds,
        367 F.3d 294 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

United States v. Smith,
        591 F.2d 1105 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Solis,
        299 F.3d 420 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Thompson,
        32 F.3d 1 (1st Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

United States v. Velgar-Vivero,
        8 F.3d 236 (5th Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Villegas,
        404 F.3d 355 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 30

United States v. Williams,
  69 F.3d 27 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## STATUTES AND RULES

18 U.S.C. § 3501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 3501(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 922. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 924(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 26

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 4(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

U.S.S.G. § 2K2.1(b)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

U.S.S.G. § 2K2.1(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-28

U.S.S.G. § 2K2.1(b)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

U.S.S.G. § 2K2.1(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

U.S.S.G. § 4B1.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**NO. 06-41128**

_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

**UNITED STATES OF AMERICA**,

Plaintiff-Appellee

-vs-

**MICHAEL RAY HARRISON,**

Defendant-Appellant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION
CRIMINAL NO. 1:05CR-70
_____

**BRIEF OF THE UNITED STATES OF AMERICA**
_____

## STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1291, 18 U.S.C. § 3742 and Rules 3 and 4(b) of the

Federal Rules of Appellate Procedure, this is an appeal from a judgment of conviction

and sentence entered on June 29, 2006, from the United States District Court in and

for the Eastern District of Texas, Beaumont Division.

# STATEMENT OF THE ISSUES

I.     Whether the evidence was sufficient to support the conviction.

II.    Whether the trial court was correct in denying Harrison's Motion to Suppress Evidence.

III.   Whether U.S.S.G. §2K2.1 is constitutional as applied to Harrison's sentencing.

IV.    Whether the trial court correctly applied U.S.S.G. §2K2.1 by increasing the base offense level for specific offense characteristics.

V.     Whether the trial court assessed a reasonable sentence.

## STATEMENT OF THE CASE

On May 18, 2005, Appellant, Michael Ray Harrison (Harrison), was indicted by a Federal Grand Jury for the Eastern of Texas, Beaumont division, in a single count indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922. (R. Vol. I, p. 12).[1] Harrison made an initial appearance on June 14, 2005, and was arraigned on June 17, 2005. (R.Vol. 1, pp. 3,4). On July 7, 2005, the government filed a notice of sentencing enhancement pursuant to 18 U.S.C. § 924(e). (R.Vol. 1, pp. 5,45).

---

[1] The Record on Appeal provided to counsel was not designated by consecutive volume but rather by type of hearing. The Record on Appeal is referred to as "R. Vol. 1" for the Docket record volume and the pertinent page number(s). The Transcript of the Suppression Hearing is designated as "R. Supp. Hrg.". and the pertinent page number(s). The transcript of the trial is designated by the "R. Volume no." followed by "Trial" and the pertinent page number(s). The transcript of the sentencing is designated as "R. Sent." and the pertinent page number. The References to the Sealed Presentence Report are designated "PSR", followed by the pertinent paragraph number. References to Government Exhibits is by "GX" and the exhibit number.

2

On July 15, 2005, Harrison filed a motion to suppress a confession made subsequent to his arrest. (R.Vol. 1, pp. 5, 52). On November 29, 2005, a hearing was held on the motion to suppress. The motion was denied. (R.Vol. 2, p. 62)

Harrison proceeded to trial before a jury on November 30, 2005. (Vol. I, p. 9). After the presentation of evidence, arguments of counsel and deliberations, the jury found Harrison guilty as to the single count of the indictment on December 1, 2005. (R.Vol. 1, pp. 9, 146). On June 29, 2006, Harrison was sentenced to 327 months confinement, five years supervised release, and a $100 special assessment. (R.Vol.1, pp. 9, 178)

Harrison gave timely notice of appeal on June 30, 2006. (R.Vol. 1, pp.10, 186).

## STATEMENT OF THE FACTS

## FACTS ADDUCED AT THE SUPPRESSION HEARING

Prior to the trial Harrison filed a Motion to Suppress any alleged statements pursuant to 18 U.S.C. § 3501, and the Fifth and Sixth Amendments. (R.Vol. I, Page 52). The court conducted a hearing on this motion. (R.Vol. I, Page 3).

Harrison, a member of the Aryan Brotherhood, was a confidential informant for the Federal Bureau of Investigation (FBI). Robert King (King), a special agent with the Federal Bureau of Investigation, (R. Supp. Hrg., p. 4) testified that he came to know Harrison as a confidential informant through Sergeant Mark Leger (Leger),

3

of the Department of Public Safety. (R. Supp. Hrg., p. 5).   According to King, Harrison provided authorities with information regarding the Aryan Brotherhood. (R. Supp. Hrg., p. 5).   Harrison was able to provide recorded statements of individuals, purchase firearms for law enforcement, and provide information as to the location of drugs, stolen vehicles, and other contraband. (R. Supp. Hrg., p. 6).  King testified that the FBI terminated their relationship with Harrison as a confidential informant in approximately January, 2005, as information indicated that Harrison was committing violent crimes within some of the gangs in which he was involved. (R. Supp. Hrg., p. 6).

Later in 2005, Harrison was the subject of an arrest warrant.  The Orange County Sheriff's Office, the Department of Public Safety, and the FBI worked together to locate Harrison for the purpose of arresting Harrison on that warrant. (R. Supp. Hrg., p. 7).   On May 5, 2005, Special Agent King and the other agencies learned that Harrison was at a residence in Mauriceville with a car that had firearms in the trunk.  Though there was a short car pursuit and the car was seized, Harrison fled and was not apprehended but was identified as being in the car.  Several firearms were located in the trunk as well as a cellphone, all of which had been stolen in a burglary in Lumberton. (R. Supp. Hrg., p. 8-9).  During the next week Harrison called Special Agent King several times and King urged him to surrender. (R. Supp. Hrg.,

p.10).

Harrison was apprehended by King, Leger, and numerous other law enforcement at a house in Nederland, Texas, on May 11, 2005, at which time Harrison asked for Sergeant Leger. (R. Supp. Hrg., p. 11).   King and Leger transported Harrison to the Jefferson County Correctional Facility where they were joined by Special Agent Larry Sanders, of the Bureau of Alcohol, Tobacco, and Firearms.  Harrison was interviewed in a large room used for probation and parole hearings furnished with a large table for six or seven seats.  The officers sat on one side and Harrison sat on the other side of the table.  There were no firearms present as they were in a correctional facility. (R. Supp. Hrg., p.16).  The interview began about forty-five minutes from the time Harrison was apprehended.  Harrison was read a waiver of rights form by Special Agent Sanders.  Harrison then reviewed the form and signed it. (R. Supp. Hrg., p.17).  At no time after the interview began did Harrison request to stop the interview.   King, a law enforcement officer with experience as a police officer who has dealt with individuals under the influence of drugs and alcohol, testified that Harrison did not display any characteristics of being under the influence of drugs or alcohol.  At the time of his arrest, Harrison did not stagger but rather had his hands up and was articulate, specifically asking for Sergeant Leger. (R. Supp. Hrg., p.18)   He was cooperative and even asked

5

appropriate questions about his arrest. Harrison never requested any breaks during the interview. During the interview Harrison made various admissions about burglarizing a residence in Lumberton and stealing various firearms. Harrison advised that he and others used a garage door opener to access the garage and then used a key they had to the house. (R. Supp. Hrg., p.19). According to King, Harrison possessed very good recall of the events of the burglary. (R. Supp. Hrg., p.21). No promises or threats were made to Harrison in obtaining the statement. (R. Supp. Hrg., p.37).

Leger, a Sergeant with the Texas Department of Public Safety (DPS), testified that Harrison was a confidential informant with the DPS. (R. Supp. Hrg., p. 37, 39). Leger further testified that he was involved in Harrison's arrest in May of 2005, after which Harrison was taken to the Jefferson County Jail. (R. Supp. Hrg., pp. 39-41). Approximately forty-five minutes after his arrest, Harrison was in a room used for probation and parole hearings. The room was furnished with a large table and six to seven chairs. Special Agent Sanders gave Harrison a warning as to his rights and Harrison signed the waiver of rights. Leger signed the waiver as a witness. (R. Supp. Hrg., p.41). Harrison never requested an attorney and never requested that the interview stop. Harrison proceeded to tell the officers the sequence of events that led to the burglary in Lumberton during which some guns were stolen from the residence.

6

(R. Supp. Hrg., p.42-44). No promises or threats were made during the interview and Harrison appeared coherent and articulate. Harrison had good recall of the events and was very detailed in his explanation of anything discussed. (R. Supp. Hrg., p. 45). Leger did not believe that Harrison was under the influence of any drugs or alcohol. No firearms were displayed during the interview. (R. Supp. Hrg., p.46).

Harrison testified in the suppression hearing in his own behalf. (R. Supp. Hrg., p. 58). Harrison claimed that when he was arrested in May, 2005, he had been awake approximately a week on several different drugs, including methamphetamine. (R. Supp. Hrg., p. 60). Harrison testified that he was not told he was being arrested for being a felon in possession of firearms, but was told he was being arrested for a warrant for a failure to appear in Harris County. (R. Supp. Hrg., p. 64). Harrison stated that he signed the waiver of rights believing he was waiving his rights as to the Harris County warrants. (R. Supp. Hrg., pp. 64-65). He was aware that his girlfriend, Arica Weaver, had been arrested and claimed that he was led to believe that if he signed the waiver, he would be helping her out. (R. Supp. Hrg., p. 66). Harrison testified that he did not believe his execution of the waiver was made voluntarily, nor by his own free choice. (R. Supp. Hrg., p. 67).

The court denied Harrison's motion to suppress, finding that he had effectively waived his rights. (R. Supp. Hrg., p. 92). The district court specifically found that the

Harrison had been arrested a number of times and had a number of felony convictions. Harrison admitted he had a lot of experience in the criminal justice system. Thus the district court found that Harrison knew exactly what he was signing was a waiver of his rights and that he signed the document and voluntarily spoke with the officers. As to Harrison's allegation he was under the influence of drugs the court noted that Harrison acted normally during the interview carefully avoiding the subject of who was with him at the time of the burglary and other issues, thus displaying the necessary mental faculties to make those distinctions. The district court further found that no threats or promises were made to obtain the statements. (R. Supp. Hrg., p. 92-94).

## FACTS ADDUCED AT TRIAL

King, testified that he came to know Harrison as a confidential informant through Leger. (R. 1 Trial, p. 195). King met Harrison some fifty times during the one-year period that Harrison was an informant. (R.1 Trial, pp. 195-6). King testified that he had a good relationship with Harrison and that Harrison was personable and articulate. (R. 1 Trial, p.196). King testified that the FBI terminated their relationship with Harrison as a confidential informant on January 14, 2005, at which time Harrison executed a form stating that he was no longer acting as a source for the FBI. (R. 1 Trial, p.196-7). Later in 2005, it came to King's attention that Harrison was the

subject of arrest warrants. (R. 1 Trial, p. 197). Sergeant Leger, Special Agent King, and several law enforcement agencies collectively decided to arrest Harrison on the outstanding warrant. (R. 1 Trial, p.197). Special Agent King eventually developed information that Harrison may be in a car with firearms in it and arranged for the sheriff's office to attempt a traffic stop when the vehicle was located. (R. 1 Trial, p. 198). On May 5, 2005, Special agent King and Sergeant Leger along with members of Orange County law enforcement, observed a vehicle which they believed Harrison to be driving. (R. 1 Trial, pp. 167-8).

Matt Bryant (Bryant), an Orange County Sheriff's deputy,  testified that on May 5, 2005, he was asked to assist in locating a particular vehicle in Orange county, a tan Altima. (R. 1 Trial, pp. 139-40). Bryant soon saw the vehicle which he was looking for and attempted to stop it for a equipment violation. (R. 1 Trial, p. 142). When he attempted to stop the vehicle, it sped off. (R. 1 Trial, p. 143). The vehicle eventually stopped abruptly, and three people ran from the vehicle, two white males and one white female. (R. 1 Trial, p. 143). Bryant was able to apprehend the female, but was unable to apprehend the two males.  (R. 1 Trial, p. 144). The female, Arica Weaver (Weaver),  identified the two males to Deputy Bryant  as Harrison and William Boles.  (R. 1 Trial, p. 145). Bryant observed that the interior of the vehicle was in disarray, containing drug paraphernalia, pistols, several long guns, and

9

computers. (R. 1 Trial, p. 146).

According to Weaver, prior to her incarceration before trial, she was living with Harrison, whom she had known for approximately two years. (R. 1 Trial, p. 113-115). She testified that in May, 2005, she, along with Harrison and another person, drove by a home in Lumberton in order to possibly break into a home. (R. 1 Trial, p. 115-117). They then went to Vidor where Weaver was dropped off at someone's home, and Harrison, along with several other men, left. (R. 1 Trial, p. 117). Weaver saw Harrison approximately an hour later, at which time he and several other people had several items with them, including computers, clothes, and guns. (R. 1 Trial, p. 18). Weaver observed the men divide the guns, with each taking some of them. (R. 1 Trial, p. 118). They then left and went to another location in Deweyville, then to another location in Maurceville, where Harrison and another individual went outside to shoot the guns. (R. 1 Trial, p. 119-120). Weaver and Harrison then left, according to Weaver, along with another individual. (R. 1 Trial, p. 120-121). At that time the police attempted to stop the vehicle Weaver and the others were in, and after a short pursuit the vehicle stopped, everybody ran from the vehicle, and Weaver was taken into custody by law enforcement. (R. 1 Trial, p. 121-2).

Among the items in the car was a cellphone. While at the scene, Special Agent Larry Sanders (Sanders), Bureau of Alcohol, Tobacco, and Firearms (BATF), used

the cellphone memory to call a number believed to be the owner and asked one Clyde

Marcantel if he had recently been burglarized. Marcantel was at that moment in his

living room with a Lumberton police officer reporting the burglary of his residence.

(R. 1 Trial, p. 102). Marcantel testified that on May 5, 2005, when he arrived home

from work he observed his garage door open, and several items inside the garage out

of place. (R. 1 Trial, p. 100). When he entered his home he observed his living room

was in disarray, several items looked as though they were in the process of being

removed from his home, and several guns had been taken. (R. 1 Trial, p. 100-1).

Marcantel provided the Lumberton police department with an inventory of the items

which he believed had been stolen from his home. (R. 1 Trial, p. 102-3). At trial,

Marcantel identified government's exhibits 1-6 as being the firearms which were

taken from his home. (R. 1 Trial, p. 104-5). Marcantel further identified the firearms

as being those which were listed in the indictment. (R. 1 Trial, p.105-6).

Based upon further information, on May 11, 2005, late in the evening, Special

Agent King, Sergeant Leger, and other law enforcement officers surrounded a home

in Nederland, Texas, and demanded Harrison come out of the home and surrender,

which Harrison did. (R. 1 Trial, pp. 169, 199). Prior to leaving the house Special

Agent King retrieved a briefcase belonging to Harrison which contained several

hundred photographs (R. 1 Trial, p. 201), including two photographs of Weaver next

to a Nissan Altima similar to the one in which the guns were recovered on May 5, 2005. The photographs had a processing date of May 3, 2005. (R. 1 Trial, p. 207-9).

Sergeant Mark Leger and Special Agent King then took Harrison to the Jefferson County Sheriff's department where they met Special Agent Sanders for the purpose of interviewing Harrison. By then it was early the morning of May 12, approximately 12:45 AM. (R. 1 Trial, pp. 163, 172-174, 202-3). According to King, Harrison was taken to a large room in the sheriff's office that is used for probation and parole hearings. They sat around a large table, and Special Agent Sanders read Harrison his Miranda warnings and Harrison then reviewed and executed the waiver of rights, and began speaking with the officers. (R. 1 Trial, p. 202; GX8). Harrison was not handcuffed and no guns were present because they were in a jail facility. Harrison appeared at ease and cooperative, was coherent and articulate, and did not appear under the influence of alcohol or drugs. (R. 1 Trial, p. 203). In the oral statement, Harrison allegedly admitted that he and other people who he wished not to name committed a burglary and stole firearms from a home in Lumberton. (R. 1 Trial, p. 204). Harrison advised they used a garage door opener to access the garage and then used a key they had to the house. Harrison also bragged about stealing the Nissan Altima from a dealership in Lake Charles. (R. 1 Trial, p. 205).

Sergeant Leger identified Harrison as being a former informant beginning in

approximately July, 2004. (R. 1 Trial, pp. 164-5).    Harrison's services as an

informant, however, were terminated because he was no longer effective as such. (R.

1 Trial, p. 166).   In April or May of 2005, Leger was asked to assist in the execution

of an arrest warrant of Harrison. (R. 1 Trial, p. 166).   Sergeant Leger also testified

that Harrison freely and voluntarily executed the waiver of rights form in the presence

of the three officers. (R. 1 Trial, p. 174).   Harrison appeared alert, articulate, coherent,

and not under the influence of drugs or alcohol. (R. 1 Trial, p. 178-9).   According to

Leger, Harrison told them that he and another individual had gone into a residence

in Lumberton using a garage door opener and a key and had taken coins, jewelry, and

weapons. (R. 1 Trial, p. 176-7).   Harrison stated the types of guns taken included a

.44 Magnum handgun, a .38 caliber Derringer, a .22 caliber rifle, and four or five

rifles. (R. 1 Trial, p. 178).   Harrison admitted that after leaving the residence, he and

the others divided up the guns as well as shooting the guns. (R. 1 Trial, pp. 179-80).

According to Leger, Harrison also admitted to being the driver of the vehicle they

were pursuing on May 5 and was one of the persons who fled after the vehicle was

stopped. (R. 1 Trial, pp. 181-2).

    The government next called Sanders, who testified as an expert in firearms and

stated that government's exhibit's numbers 1-6 were firearms that traveled in

interstate commerce. (R. 2 Trial, pp. 228-32).   Sanders, along with a other BATF

employees, traced the ownership history of the firearms. (R. 2 Trial, p. 232). Sanders testified that while the ownership of some were not possible to determine, others showed the owners as being either Clyde Marcantel or Barbara Marcantel. (R. 2 Trial, p. 233). Sanders further testified that he was present on May 5, 2005, at the end of a pursuit of a vehicle in which the firearms were discovered, and again at the Jefferson County jail where Harrison was interviewed. Sanders reiterated that he advised Harrison of his right to remain silent and his right to have an attorney present through the use of a standard rights form, which was read to and by Harrison. (R. 2 Trial, p. 237) Sanders also testified that Harrison admitted burglarizing the residence in Lumberton and taking firearms and other items. The firearms were taken back to Orange County where they were divided up and fired. Sanders also related that Harrison was able to describe the firearms in a detailed manner as indicated by Sergeant Leger. (R. 2 Trial, p. 238-9).

The government also presented a stipulation that prior to the date alleged in the indictment Harrison had been convicted of a felony offense. (R. 1 Trial, p. 220).

## SUMMARY OF ARGUMENT

Credible testimony established Harrison handling and shooting firearms and later fleeing from a vehicle containing six firearms. Harrison's confession also established that he burglarized a residence from where he took the six firearms,

several of which he accurately described. No other conclusion could have been drawn by a rational jury except that Harrison possessed the firearms. This evidence, when viewed in a light most favorable to the verdict, supports the jury's conclusion that Harrison knowingly possessed the firearms.

Harrison's confession was the result of his own free and rational choice. Harrison was questioned shortly after his arrest in an appropriate setting, was advised of his Miranda rights and waived them. Experienced officers testified that Harrison did not appear under the influence but was alert and articulate, never requested a break during the interview, and provided detailed facts about the burglary of the firearms he was charged with possessing. The court did not err in denying the suppression motion.

There is no constitutional impediment to a district court determining specific offense characteristics under the advisory sentencing guidelines. The district correctly applied the specific offense characteristics of U.S.S.G. §2K2.1 in determining the applicable guideline range.

The district court properly calculated the applicable guideline range and imposed a sentence falling within that range. Such a sentence is presumptively reasonable and was in fact, reasonable in this case.

15

# ARGUMENT

**ISSUE I**:  **Whether the evidence was sufficient to support the conviction**.

## STANDARD OF REVIEW

When reviewing the sufficiency of the evidence, the appellate court views the evidence and the inferences therefrom in a light most favorable to the verdict and determines whether a rational trier of fact could have found, beyond a reasonable doubt, that the government proved the defendant's guilt on each element of the charged offense.  United States v. Jones, 133 F.3d 358, 362 (5th Cir. 1998); United States v. Velgar-Vivero, 8 F.3d 236, 239 (5th Cir. 1993).

## DISCUSSION

The evidence introduced at trial conclusively established Harrison's guilt beyond a reasonable doubt.

To obtain a conviction under 18 U.S.C. § 922(g)(1), the government must prove three essential elements:

    (1)    that the defendant previously had been convicted of a felony;

    (2)    that he knowingly possessed the firearm as alleged; and,

    (3)    that the firearm traveled in or affected interstate commerce.

United States v. Fields, 72 F.3d 1200, 1211 (5th Cir. 1996).  Harrison challenges the

sufficiency of proof of the second element, claiming that it is supported only by his uncorroborated confession.

A felon's possession of a firearm may be actual or constructive and may be proven by direct or circumstantial evidence. United States v. Jones, 133 F.3d 358, 362 (5th Cir. 1998). Actual possession means the person knowingly had direct physical control over a firearm at a given time. United States v. Munoz, 150 F.3d 401, 416 (5th Cir. 1998). Constructive possession of a firearm is the knowing exercise of or knowing power or right to exercise dominion or control over that firearm. U.S. v. Jones, 133 F.3d 358, 362 (5th Cir. 1998). Possession of a firearm may be sole or joint. United States v. Smith, 591 F.2d 1105, 1107 (5th Cir. 1979).

When considered in the light most favorable to the verdict, there is substantial evidence of Harrison's knowing possession of the various firearms in addition to his confession. The evidence of knowing possession was supported by the sworn testimony of Special Agent King and Sergeant Leger, who requested the assistance of the Orange County Sheriff's Office to watch for and attempt to stop a vehicle which they believed Harrison to be driving. (R. 1 Trial, pp. 167-8). Matt Bryant, an Orange County Sheriff's deputy, testified that on May 5, 2005, he located the tan Altima, (R. 1 Trial, pp. 139, 140) and attempted to stop it for a equipment violation. (R. 1 Trial, pp. 142-142). When he attempted to stop the vehicle, it sped off. The

17

vehicle eventually stopped abruptly, and three people ran from the vehicle, two white males and one white female. (R. 1 Trial, pp. 143). Bryant was able to apprehend the female, Arica Weaver, but was unable to apprehend the two males. (R. 1 Trial, p. 144). Weaver, at the moment of her apprehension, identified the two males to Deputy Bryant as Harrison and William Boles. (R. 1 Trial, p. 145). Bryant observed that the interior of the vehicle was in disarray, containing drug paraphernalia, pistols, several long guns, and computers. (R. 1 Trial, pp. 146). Weaver testified that she was living with the defendant and had known him for approximately two years. (R. 1 Trial, p. 113-15). In May, 2005, she along with Harrison and another person drove by a home in Lumberton in order to possibly break into it. (R. 1 Trial, pp. 115-17). They then went to Vidor where Weaver was dropped off at someone's home, and Harrison, along with several other men, left. (R. 1 Trial, p. 117). When Weaver saw Harrison approximately an hour later he and several other people had several items with them, including computers, clothes, and guns. Weaver observed the men divide the guns, with each taking some of them. (R. 1 Trial, pp. 117-18). They then left and went to another location in Deweyville, then to another location in Maurceville, where Harrison and another individual went outside to shoot the guns. (R. 1 Trial, pp. 119-20). Weaver and Harrison then left, according to Weaver, along with another individual. (R. 1 Trial, pp. 120-21). At that time the police attempted to stop the

vehicle Weaver and the others were in, and after a short pursuit the vehicle stopped, everybody ran from the vehicle, and Weaver was taken into custody by Officer Bryant. (R. 1 Trial, pp. 121-22).

The testimony clearly corroborates that Harrison actually possessed the firearms and fired them. Further corroborating Weaver's testimony was the testimony of Clyde Marcantel whose Lumberton residence was the subject of the burglary that day and subsequently identified the firearms as those taken in the burglary. (R. 1 Trial, p. 104-6). The detailed statement given by Harrison to Sergeant Leger and Special Agents King and Sanders could have only been given by someone who had committed the burglary as Harrison told them that he and another individual had gone into a residence in Lumberton using a garage door opener and a key and had taken coins, jewelry, and weapons. (R. 1 Trial, pp. 176-7). Harrison was able to describe the types of guns taken, including a .44 Magnum handgun, a .38 caliber derringer, a .22 caliber rifle, and four or five rifles. (R. 1 Trial, p.178), identical to several of the firearms recovered. Harrison admitted that after leaving the residence Harrison and the others divided up the guns as well as shooting the guns. (R. 1 Trial, p. 179-80). Further, Harrison also admitted to being the driver of the vehicle they were pursuing on May 5 and was one of the persons who fled after the vehicle was stopped. (R. 1 Trial, p. 181-2). All of Harrison's statements were corroborated by testimony as well

19

as photographs taken from Harrison which depicted Weaver standing near a similar vehicle from which the firearms were later recovered. (R. 1 Trial, p. 207-9).

Credibility determinations are the sole province of the jury. <u>United States v. Cathey</u>, 259 F.3d 365, 368 (5th Cir.2001)  The jury chose to believe the various witnesses that corroborated Harrison's own admissions. No other conclusion could have been drawn by a rational jury except that Harrison possessed the firearms. This evidence, when viewed in a light most favorable to the verdict, supports the jury's conclusion that Harrison knowingly possessed the firearms.

**<u>ISSUE II</u>: Whether the trial court was correct in denying Harrison's Motion to Suppress Evidence**.

## <u>STANDARD OF REVIEW</u>

The standard of review for a motion to suppress based on live testimony at a suppression hearing is to accept the trial court's factual findings unless clearly erroneous or influenced by an incorrect view of the law. <u>United States v. Williams</u>, 69 F.3d 27, 28 (5th Cir. 1995) *(citing* <u>United States v. Alvarez</u>, 6 F.3d 287, 289 (5th Cir. 1993)).  The trial court's conclusions of law are reviewed de novo. <u>Id</u>.  Further, in reviewing a ruling on a motion to suppress, the Court of Appeals reviews the evidence in the light most favorable to the party who prevailed in the district court. <u>United States v. Cardeneas</u>, 9 F.3d 1139, 1147 (5th Cir. 1993).

## DISCUSSION

Harrison alleges that the custodial statements he made were not the product of his own free and rational choice because he was under the influence of drugs and that there was no testimony to refute his alleged mental condition. To the contrary, there was ample evidence upon which the district court could rely to make factual findings that Harrison was rational and possessed the necessary mental faculties to waive his right to remain silent and make a voluntary statement.

King testified that Harrison was a confidential informant utilized by him and Sergeant Leger. Harrison provided authorities with information regarding the Aryan Brotherhood and was able to provide recorded statements of individuals, purchase firearms for law enforcement, and provide information as to the location of drugs, stolen vehicles, and other contraband. (R. Supp. Hrg., p. 4-6). During the week prior to his apprehension, Harrison called Special Agent King several times and King urged him to surrender. (R. Supp. Hrg., p. 10). When apprehended on May 11, 2005, Harrison did not stagger but rather had his hands up and was articulate, specifically asking for Sergeant Leger. (R. Supp. Hrg., pp. 11,18). Harrison was cooperative and asked appropriate questions about his arrest. King and Leger transported Harrison to the Jefferson County Correctional Facility where they were joined by Special Agent Sanders. The interview began about forty-five minutes from the time Harrison

21

was apprehended. The officers sat on one side of the table and Harrison sat on the other side. There were no firearms present. (R. Supp. Hrg., p. 16). Harrison was not handcuffed. Harrison was read a waiver of rights form by Special Agent Sanders. Harrison then reviewed the form and signed it. (R. Supp. Hrg., p. 17). At no time after the interview began did Harrison request to stop the interview. King, a law enforcement officer with experience as a police officer who has dealt with individuals under the influence of drugs and alcohol, testified that Harrison did not display any characteristics of being under the influence of drugs or alcohol. Harrison never requested any breaks during the interview. No promises or threats were made to Harrison in obtaining the statement. (R. Supp. Hrg., p. 37). Sergeant Leger and Special Agent Sanders also testified that Harrison was articulate and was able to describe the circumstances of the burglary in specific details that included the make and model of the various handguns that were taken which matched those recovered from the car. Harrison had good recall of the events and was very detailed in his explanation of anything discussed. Leger also testified that he did not believe that Harrison was under the influence of any drugs or alcohol. (R. Supp. Hrg., p. 45).

A confession is voluntary if, under the totality of the circumstances, the statement is a product of free and rational choice. Among the factors to be considered are (1) the time elapsing between the arrest and arraignment of the defendant, if the

22

statement was made after arrest and before arraignment; (2) whether the defendant knew the nature of the offense of which he was suspected at the time of the confession; (3) whether the defendant was advised that he was not required to make any statement and that any statement could be sed against him; (4) whether or not such defendant was advised prior to questioning of the right to assistance of counsel; and, (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of these five factors need not be conclusive. United States v. Restrepo, 994 F.2d 173, 184 (5th Cir. 1993) (citing 18 U.S.C. 3501(b); United States v. Reynolds, 367 F.3d 294, 298 (5th Cir. 2004)).

The contentions of involuntariness in United States v. Reynolds, 367 F.3d 294, 298 (5th Cir. 2004), are very similar to those made by Harrison. Defendant Reynolds claimed that his having taken methamphetamine an hour before his arrest and not having slept for three days made his confession to arresting officers involuntary. Id. at 297. The court in Reynolds noted that it had reviewed several cases where defendants had made claims of involuntariness based upon the taking of narcotics, including United States v. Solis, 299 F.3d 420, 439 (5th Cir. 2002) and United States v. Garcia Abrego, 141 F.3d 142, 170 (5th Cir. 1998). Reynolds, 367 F.3d at 298. In each of the cases, including Reynolds, the court relied upon the observations of the

interrogating officers as to the whether the defendant demonstrated an awareness of his rights and of the questions being asked, the appropriateness of the responses of the defendant, the cooperation of the defendant, the specificity of the defendant's responses, and the experience of the officers conducting the interrogation. <u>Reynolds</u>, 367 F.3d at 298-9.

The district court in the present case used these same factors as well as other factors in finding that Harrison's admissions were voluntary. The court found that Harrison knew he was signing a waiver of his rights and that he signed the document and voluntarily spoke with the officers. As to Harrison's allegation he was under the influence of drugs, the district court noted that Harrison acted normally during the interview, carefully avoiding the subject of who was with him at the time of the burglary and other issues, thus displaying the necessary mental faculties to make those distinctions. The district court further found that no threats or promises were made to obtain the statements. (R. Supp. Hrg., p. 92-94). It is clear that the district court believed the interrogating officers who testified that Harrison was questioned shortly after his arrest in the most appropriate setting available, was advised of his <u>Miranda</u> rights and waived them, did not appear under the influence but was alert and articulate, never requested a break during the interview, and provided very detailed facts about the burglary of the firearms he was charged with possessing.

The district court did not err in finding that the statements were made voluntarily.

**ISSUE III:  Whether U.S.S.G. §2K2.1 is constitutional as applied to Harrison's sentencing.**

**ISSUE IV:  Whether the trial court correctly applied U.S.S.G. §2K2.1 by increasing the base offense level for specific offense characteristics.**

## STANDARD OF REVIEW

Under <u>Booker</u>, when a sentence is challenged on appeal, the court of appeals will review the sentence to determine whether it is "unreasonable."  <u>United States v. Booker</u>, 543 U. S. 220, (2005); <u>United States v. Mares</u>, 402 F.3d 511, 520 (5th Cir. 2005).  The Court did not define "reasonableness," but stated that the factors listed in 18 U.S.C. § 3553(a) "will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  <u>Booker</u>, 543 U. S. at 267.  Courts of appeals should continue to review a district court's factual findings for clear error. <u>United States v. Angeles-Mendoza</u>, 407 F.3d 742, 747 (5th Cir. 2005); <u>cf.</u>, <u>Maine v. Taylor</u>, 477 U.S. 131, 145 (1986) ("the 'clearly erroneous' standard of review long has been applied to nonguilt findings of fact by district courts in criminal cases"). The district court's interpretation and application of the guidelines are reviewed *de novo*.  <u>Angeles-Mendoza</u>, 407 F.3d at 746; <u>United States v. Villegas</u>, 404 F.3d 355, 359 (5th Cir. 2005)).

# DISCUSSION

At sentencing, the district court adopted the recommendations of the presence report finding the base offense level to be 26 with a two-level increase under U. S. Sentencing Guidelines Manuel § 2K2.1(b)(1)(A)(2005) for possessing between three to seven firearms, a two-level increase for possessing stolen firearms under U.S.S.G § 2K2.1(b)(4), and a four-level increase under U.S.S.G § 2K2.1(b)(6) for possessing a firearm in connection with another felony offense, for a total offense level of 34. (R. Sent., p. 14-15); (PSR, para. 18-21, 27). As Harrison was subject to the provisions of 18 U.S.C. § 924(e), he was considered an armed career offender under U.S.S.G § 4B1.4, making his total offense level under that provision also to be 34. (PSR, para. 28). At offense level 34, criminal history category VI, the applicable guideline imprisonment range was 262 - 327 months. Harrison was sentenced to 327 months imprisonment. (R. Sent., p. 17). This did not exceed the statutory range of fifteen years to life under 18 U.S.C. § 924(e).

Harrison contends his sentence is unconstitutional because the district court found three factors or specific offense characteristics that increased the guideline sentencing range, which were not submitted to or determined by the jury. This issue was resolved by Booker, 543 U. S. at, 245-46 which struck down the statutory provisions that made the guidelines mandatory but required a district court to

calculate the guideline range and consider it advisory. <u>Mares</u>, 402 F.3d at 518-19. Thus, Harrison's argument as to the constitutionality of the sentence is foreclosed.

Harrison next complains that the district court incorrectly applied the provisions of U.S.S.G. §2K2.1, specifically the two level increase under U.S.S.G §2K2.1(b)(1)(A) for possessing between three to seven firearms, the two level increase for possessing stolen firearms under U.S.S.G §2K2.1(b)(4), and the four level increase under §2K2.1(b)(6) for possessing a firearm in connection with another felony offense, which Harrison incorrectly asserts was applied for trafficking in firearms. (Appellant's Brief, p. 21-22). The evidence before the court was substantial that each of these specific offense characteristics were present.

A district court's determination of the number of firearms, whether a firearm is stolen, and the relationship between a firearm and another offense is a factual finding which is reviewed for clear error rather than <i>de novo.</i> <u>United States v. Mitchell</u>, 166 F.3d 748, 754 (5th Cir. 1999) (citing <u>United States v. Condren</u>, 18 F.3d 1190, 1199 (5th Cir. 1994)). A sentencing court's factual findings are entitled to substantial deference. A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole. <u>United States v. Brown</u>, 54 F.3d 234, 240 (5th Cir. 1995). In this case, the district court did not clearly err in finding that Harrison possessed six firearms stolen in connection with Harrison's commission of the felony

offense of burglary.

The number of firearms stolen during the burglary was well established. The taking of such firearms during a burglary permits the simultaneous application of subsections U.S.S.G. §§ 2K2.1(b)(4) and (b)(5) and does not constitute prohibited double counting. United States v. Luna, 165 F.3d 316, 325 (5th Cir. 1999).

U.S.S.G. § 2K2.1(b)(5) mandates a four level upward adjustment when the sentencing court finds that the defendant used of possessed any firearm "in connection with" another "felony offense." The relevant commentary defines "felony offense" as any offense (state, federal, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought or a conviction obtained. U.S.S.G. § 2K2.1(b)(5), cmt. n. 7. Because the phrase "in connection with," as used in U.S.S.G. § 2K2.1(b)(5), is not defined, courts construe the phrase according to its ordinary and natural meaning. United States v. Condren, 18 F.3d 1190, 1196 (5th Cir.1994). The phrase "in connection with", as used in Section 2K2.1(b)(5), should be construed **broadly and expansively**. United States v. Loney, 219 F.3d 2871 (3rd Cir.2000); United States v. Gary, 74 F.3d 304 (1st Cir.1996) (citing United States v. Thompson, 32 F.3d 1, 7 (1st Cir.1994)) (emphasis added). Section 2K2.1(b)(5) reflects the undeniable fact that possession of firearms obviously increases the danger of violence whether or not such weapons are actually

used. <u>Condren</u>, 18 F.3d at 1197.

In the instant case, Harrison's possession of six firearms stolen during the burglary of a residence is clearly established by the testimony of Arica Weaver, Clyde Marcantel and Harrison's detailed confession that he committed the burglary. (R. 1 Trial, pp. 115-17, 104-6; R. 2 Trial, p. 238-9; PSR, ¶ 13 and 21). The application of the sentencing guidelines and the specific offense characteristics were constitutional and correctly applied to the facts of the case.

**ISSUE V:  Whether the trial court assessed a reasonable sentence.**

## STANDARD OF REVIEW

Under <u>Booker</u>, when a sentence is challenged on appeal, the court of appeals will review the sentence to determine whether it is "unreasonable." <u>United States v. Booker</u>, 543 U. S. 220, 264 (2005); <u>United States v. Mares</u>, 402 F.3d 511, 520 (5th Cir. 2005). The Court did not define "reasonableness," but stated that the factors listed in 18 U.S.C. § 3553(a) "will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." <u>Booker</u>, 543 U. S. at 261. Courts of appeals should continue to review a district court's factual findings for clear error. <u>United States v. Angeles-Mendoza</u>, 407 F.3d 742, 747 (5th Cir. 2005); <u>cf.</u>, <u>Maine v. Taylor</u>, 477 U.S. 131, 145 (1986) ("the 'clearly erroneous' standard of review long

has been applied to nonguilt findings of fact by district courts in criminal cases"). The district court's interpretation and application of the guidelines are reviewed *de novo*. Angeles-Mendoza, 407 F.3d at 746; United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005)).

## DISCUSSION

Sentencing is this case was conducted on June 29, 2006, after the Supreme Court's decision in Booker. The trial court was aware of Booker and conducted the sentencing in accordance therewith. Harrison notes in his brief, at page 30, that conceivably, Harrison's sentence could be a Guideline sentence, if the specific offense characteristics are applicable and if the district court interpreted the Guidelines to be advisory only. When, in its discretion, a court imposes a sentence falling within a properly calculated guideline range, such a sentence is presumptively reasonable. United States v. Alonzo, 435 F.3d 551, 554 (5th Cir. 2006). As noted in the previous issue, the district court properly calculated the applicable guideline range.

Based on the law of this circuit, there was no error, as the sentence was within the applicable guidelines range and is presumed reasonable, moreover, based on the facts of this case, the sentence was in fact reasonable.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the

district court's ruling regarding Harrison's motion to suppress be affirmed and that

the conviction and sentence also be affirmed.

Respectfully submitted,


MATTHEW D. ORWIG
United States Attorney

_____
ROBERT L. RAWLS
Assistant United States Attorney
Louisiana Bar No. 17235
350 Magnolia St., Suite 150
Beaumont, Texas  77701-2237
(409) 839-2538

## CERTIFICATE OF SERVICE

I hereby certify that two (2) true and correct copies of the foregoing Brief of the

United States and a 3 ½" diskette containing an electronic copy of the Appellee's

Brief in Adobe Portable Document Format have been mailed via United States Mail,

postage prepaid, to Attorney for the Appellant, Douglas M. Barlow, 485 Milam,

Beaumont, Texas  77701, on the ____ day of April, 2007.


_____
ROBERT L. RAWLS
Assistant United States Attorney

31

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8020 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect 9 in 14-point Times New Roman font.

_____
Robert L. Rawls
Assistant United States Attorney